UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NICHOLAS ROBERSON,

      Plaintiff,

   v.                           CASE NO. 2:09-CV-12927
                              JUDGE DENISE PAGE HOOD
J. TORRES, et al.,              MAGISTRATE JUDGE PAUL KOMIVES

      Defendants.
                            /

**REPORT AND RECOMMENDATION ON: (1) DEFENDANTS' MOTIONS FOR DISMISSAL OR SUMMARY JUDGMENT (docket #22 & #43); and (2) DEFENDANTS' MOTION TO STAY DISCOVERY (docket #44)**

I.   RECOMMENDATION ................................................................. 1
II.  REPORT ............................................................................ 2
     A.   *Procedural Background* ..................................................... 2
     B.   *Legal Standard* ............................................................ 4
     C.   *Exhaustion* ................................................................ 6
          1.   *Exhaustion Generally* ................................................ 6
          2.   *Analysis* ............................................................ 7
     D.   *Summary Dismissal* ........................................................ 11
          1.   *Claims Against Defendants McRoberts, Evers, and Eaton* ............... 11
          2.   *Injunctive Relief* ................................................... 13
          3.   *Official Capacity Claims* ............................................ 14
     E.   *Motion to Stay Discovery* ................................................. 15
     F.   *Conclusion* ............................................................... 15
III. NOTICE TO PARTIES REGARDING OBJECTIONS ........................................... 16

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should grant in part and deny in part defendants' two motions for dismissal or summary judgment (docket #22 and #43). Specifically, the Court should conclude that plaintiff's claims against defendants Eaton, Sarnac, and Pirlot are not properly exhausted, and should grant summary judgment to these defendants. In all other respects, the Court should deny defendants' motions for summary judgment. Pursuant to 28 U.S.C. § 1915(e)(2)(b), the Court should *sua sponte* dismiss plaintiff's claims against defendants McRoberts, Evers, and Eaton,

plaintiff's request for injunctive relief, and plaintiff's claims against the defendants in their official capacities. If the Court accepts these recommendations, only plaintiff's monetary damages claims against defendants Torres, De Los Santos, and eight unknown correctional officers in their individual capacities will remain. Finally, the Court should deny as moot defendants' motion to stay discovery (docket #44).

II. REPORT:

A. *Procedural Background*

Plaintiff Nicholas Roberson is a state prisoner who, at the times relevant to this action, was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan. Plaintiff commenced this action on June 25, 2009, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Michigan. The case was transferred to his Court on July 24, 2009, and plaintiff filed an amended complaint on August 12, 2009. Defendants are Correctional Officers James Torres, Juan De Los Santos; Deputy Warden Lee McRoberts; Resident Unit Manager Brian Evers; Shawne Sarnac and Jennifer Pirlot, employees in the Corrections Mental Health Program; Grievance Coordinator James Eaton; and eight unknown correctional officers.

In his amended complaint plaintiff alleges that defendants violated his Eighth Amendment rights by using excessive force, failing to protect him, and failing to appropriately respond to his serious medical needs, and that they violated his First Amendment rights by retaliating against him for the filing of grievances. Specifically, plaintiff alleges that on March 10, 2009, he was instructed to move to the top bunk in his cell to make room for a new cell mate, and his current cell mate was instructed to pack his belongings to move to another cell. He tried to explain to the officer that he

2

suffered from antisocial personality disorder, but was confronted by defendant Evers. Although he and his cell mate were "slowly" complying with the orders they had been given, the Emergency Response Team (ERT) was called. Defendant De Los Santos asked plaintiff and his cell mate if they were ready to move, and plaintiff responded that he was not the one moving. At that point, defendant De Los Santos sprayed him with a chemical agent. He and his cell mate were assaulted by the members of the ERT, and he was again sprayed with a chemical agent. He was then removed from the cell and placed in segregation. As a result of this incident, plaintiff alleges, he fell into a state of depression. He was placed in a suicide observation cell, even though he denied any suicidal ideation. While in that cell, he was under constant surveillance. He was woken up and again sprayed with a chemical agent, and transferred to Duane L. Waters hospital. Defendant Torres wrote a misconduct ticket against plaintiff based on the initial incident in the cell.

When he was returned to the prison after his release from the hospital, plaintiff was informed that his psychological treatment team had been switched by defendant Pirlot, and that his new therapist was defendant Sarnac. Plaintiff alleges that defendant Sarnac failed to meet with him and falsely corroborated the claims in the misconduct ticket written by defendant Torres. In a subsequent meeting with defendant Pirlot, she threatened to have him removed from the residential treatment program and placed in an out-patient program because of his complaints. Plaintiff alleges that he filed grievances and sent letters regarding these incidents, but his complaints were denied by defendant Eaton. He also alleges that defendant Pirlot was responsible for him being transferred to a maximum security prison, where only an out-patient treatment program is available. *See* Amended Compl., at 4-10.

The matter is currently before the Court on three motions filed by defendants. On November

3

9, 2009, defendants De Los Santos, McRoberts, Evers, and Eaton filed a motion to dismiss or for summary judgment, based on plaintiff's failure to exhaust administrative remedies (docket #22). These defendants argue that plaintiff failed to properly exhaust his administrative remedies because the grievances he filed did not comply with the MDOC grievance policy. Defendant Sarnac joined in this motion on November 10, 2009, and defendant Pirlot joined in the motion on November 23, 2009. Plaintiff filed a response to the motion on November 25, 2009, and defendants filed a reply on February 26, 2010. Second, on February 26, 2010, defendant Torres filed a motion to dismiss or for summary judgment likewise arguing that plaintiff failed to exhaust his administrative remedies (docket #43). Defendant Torres's motion adopts and incorporates the arguments made by the other defendants. Plaintiff filed a response to this motion on May 3, 2010. Finally, on February 26, 2010, defendants McRoberts, Evers, Eaton, and De Los Santos filed a motion for protective order, seeking a stay of discovery pending the Court's resolution of their motion to dismiss (docket #44). Defendants Sarnac and Pirlot joined in this motion on March 29, 2010, and plaintiff filed a response to the motion on May 5, 2010.

B. *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).[1] "An issue of fact is 'genuine' if the evidence is such that a reasonable jury

---

[1] Although defendants' motions alternatively seek dismissal under Rule 12(b)(6), a court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). Because the parties have submitted matters outside the pleadings, I consider only whether defendants are entitled to summary judgment.

4

could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C. *Exhaustion*

Defendants contend that plaintiff failed to properly exhaust his administrative remedies because he did not comply with the Michigan grievance procedure.

    1. *Exhaustion Generally*

Pursuant to the Prison Litigation Reform Act (PLRA), inmates challenging their conditions of confinement must exhaust their administrative remedies before pursuing a federal civil rights action. Specifically, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In order to properly exhaust a civil rights claim, a prisoner must comply with the prison system's "procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). As the Supreme Court recently explained, the scope of a prisoner's obligation to exhaust is defined not by the PLRA itself, but by the prison's grievance procedures:

> [T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules,

rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007) (citations omitted).

Michigan provides for a three-step grievance procedure. A Step I grievance is directed to the Step I Grievance Coordinator at the facility in which the prisoner is incarcerated. If the prisoner is dissatisfied with the Step I response, he may file a Step II appeal to the Warden of the facility. If the prisoner is again dissatisfied with the Step III response, he may file a Step III appeal to the Director of the Department of Corrections or her designee. *See* MICH. DEP'T OF CORRECTIONS POLICY DIRECTIVE 3.02.130(X), (DD), (HH) (effective Dec. 19, 2003).[2] The Policy Directive provides that a prisoner must include "the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.*, § (T).

    2.    *Analysis*

Plaintiff filed two grievances relating to the events at issue in his suit. On March 10, 2009, plaintiff completed a Step I grievance form, relating to the events occurring in his cell. It was received at Step I on March 12, 2009. On the same day, defendant Eaton denied the grievance as being vague or illegible, and noted "it is unclear as to who you talked to most dire[c]tly involve[] over this issue. Also, you received a major misconduct for (017) failure to disperse." Plaintiff completed a Step II grievance appeal on March 24, 2009. It was received at Step II the following

---

[2]The current version of the Policy Directive had been amended in respects not relevant here, and some paragraphs have been re-lettered. Throughout this Report, I cite to the Policy Directive effective December 19, 2003, in effect at the time plaintiff's claims accrued.

day by defendant McRoberts, who noted that plaintiff "needs to speak with the staff member most responsible for the issue raised in the grievance." Plaintiff completed a Step III grievance appeal. The Step III appeal was denied on July 17, 2009, because "[t]he grievant made no indication as to how he attempted to resolve the issue with involved staff, or any staff, prior to submission of a written grievance, as required by PD 03.02.130." The response also noted that "[t]he grievance identifier number has ben changed to reflect a failure to attempt to resolve, rather than a vague/unclear issue." *See* Br. in Supp. of Def.s' Mot. for Dismissal, Ex. A-2.

On March 20, 2009, plaintiff completed another Step I grievance form, this one relating to his alleged gassing by defendant Torres in his suicide observation cell and subsequent transfer to Duane Waters Hospital. It was received at Step I on March 23, 2009. Defendant Eaton rejected the grievance on the same day, based on plaintiff's "[f]ail[ure] to attempt to resolve the issue with staff[.]" Plaintiff completed a Step II grievance appeal on April 3, 2009, which defendant McRoberts rejected on April 21, 2009, again noting that "[p]risoner should attempt to resolve the issue raised with the staff member most directly involved in the issue." Plaintiff completed a Step III grievance appeal. The July 17, 2009, Step III grievance response states, in part:

> The grievant made no indication as to how he attempted to resolve the issue with involved staff, or any staff, prior to submission of a written grievance, as required by PD 03.02.130. The grievant is advised that PD 03.02.130 does not require that the attempt to resolve be made in person, a kite/letter is sufficient.

Br. in Supp. of Def.s' Mot. for Dismissal, Ex. A-3.

Defendants argue that plaintiff's failure to attempt to resolve the matter informally with the responsible official violated Policy Directive 03.02.130(P), which provides that "[p]rior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by

8

circumstances beyond his/her control[.]" By failing to do so, defendants argue, plaintiff did not "properly exhaust" his administrative remedies under § 1997e(a) by "'completing the administrative review process in accordance with the applicable procedural rules.'" *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88).

With respect to the first grievance, relating to the events in the cell, plaintiff contends that he could not have attempted to resolve the grievance with the official responsible because the members of the ERT team were wearing masks and thus were not identifiable. Defendants have presented no evidence to dispute this fact, asserting only that plaintiff could have attempted to resolve the issue with his Resident Unit Manager. However, the Policy Directive requires the prisoner to speak with "the staff member involved." P.D. 03.02.130(P). In this case, those staff members were the members of the ERT, not plaintiff's Resident Unit Manager. Plaintiff's inability to identify those involved because their faces were covered constitutes a "circumstance beyond his control," P.D. 03.02.130(P), excusing plaintiff's failure to attempt to informally resolve the grievance. Thus, the Court should conclude that plaintiff's first grievance was properly exhausted, despite the MDOC's rejection of the grievance on a procedural basis.

With respect to the second grievance, relating to the gassing of him by defendant Torres and his transfer to Duane Waters Hospital, plaintiff contends that he was immediately transferred to the Duane Waters Hospital, and did not return to the prison until the third day after the incidents forming the basis of the grievance. Thus, he contends that he could not attempt to resolve the matter informally within two days as required by P.D. 03.02.130(P). Defendants respond that plaintiff could still have attempted to informally resolve the matter after he returned to the prison on the third day. The Court should again conclude that the grievance properly exhausted plaintiff's administrative

remedies. As plaintiff correctly notes and defendants do not dispute, plaintiff was not in the prison during the two days immediately following the incidents giving rise to that grievance. Defendants contend that plaintiff could have attempted to resolve the grievance on the third day, when he returned to the prison, but that is not how the Policy Directive reads. The directive states that the prisoner "shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control[.]" P.D. 03.02.130(P). By its terms, the policy directive does not appear to require attempts at informal resolution when "circumstances beyond the prisoner's control" prevent the prisoner from attempting to resolve the matter "within two business days." Accordingly, the Court should conclude that this second grievance was properly exhausted.

These conclusions, however, do not end the matter. Even though the grievances properly exhausted the claims raised therein, it still must be determined what claims, in fact, were included within the grievances. As noted above, plaintiff's first grievance related to the alleged assault by the ERT team and his transfer to a suicide observation cell. Thus, these claims are not barred by § 1997e(a). Likewise, plaintiff's second grievance related to his alleged gassing by defendant Torres and subsequent transfer to Duane Waters Hospital, and thus these claims are not barred by § 1997e(a). The remaining claims in plaintiff's amended complaint, however, have not been properly exhausted. In his affidavit, defendant Eaton avers that plaintiff filed only the two grievances discussed above relating to the incidents alleged in plaintiff's complaint. *See* Br. in Supp. of Def.s' Mot. for Dismissal, Ex. A, ¶ 5. Plaintiff does not allege nor provide any evidence that he filed additional grievances relating to the claims in his complaint. Thus, plaintiff has failed to adequately exhaust his claims against defendant Eaton regarding the handling of his grievances, as well as his

claims against defendants Sarnac and Pirlot regarding his mental health treatment after his return to the prison from Duane Waters Hospital. The Court should therefore dismiss plaintiff's claims against these defendants, but should deny defendants' motions to dismiss in all other respects.

D.  *Summary Dismissal*

The *in forma pauperis* statute, pursuant to which plaintiff is proceeding, provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (ii) fails to state a claim on which relieve may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(b)(ii)-(iii). Where an *in forma pauperis* complaint fails to state a claim, dismissal under § 1915(e)(2)(b) is mandatory. *See Bilal v. Driver*, 251 F.3d 1346, 1348 (11th Cir. 2001); *Rogler v. United States Dep't of Health & Human Servs.*, 620 F. Supp. 2d 123, 128 (D.D.C. 2009); *Johnson v. U.K. Government*, 608 F. Supp. 2d 291, 293 (D. Conn. 2009); *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008). With respect to plaintiff's properly exhausted claims, the Court should dismiss pursuant to § 1915(e)(2)(b) plaintiff's claims against defendants McRoberts, Evers, and Eaton, plaintiff's request for injunctive relief, and plaintiff's claims against the defendants in their official capacities.

1.  *Claims Against Defendants McRoberts, Evers, and Eaton*

Plaintiff does not allege that defendant McRoberts or Evers participated in the alleged assaults against him by other guards. Rather, plaintiff's claims against defendants McRoberts and Evers are premised on their supervisory role over the officers involved in the assaults. The Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "[t]o

11

recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). Because plaintiff's allegations against defendants McRoberts

12

and Evers are limited to their supervisory role, petitioner has failed to establish their personal involvement in the alleged deprivations of his rights.

Further, if the Court concludes that plaintiff has properly exhausted his claims against defendant Eaton, the Court should dismiss the claims against him for failure to state a claim. With respect to defendant Eaton, as alleged by plaintiff his only role was in denying grievances submitted by plaintiff regarding the incidents alleged in the complaint. *See* Amended Compl., at 9. These allegations fail to state a constitutional claim against defendant Eaton under § 1983. Nothing in the Constitution requires a state to establish a prison grievance system, nor to investigate or respond to grievances submitted pursuant to prison policy. *See Carlton v. Jondreau*, 76 Fed. Appx. 642, 644 (6th Cir. 2003); *Miller v. Bock*, 55 Fed. Appx. 310, 311-12 (6th Cir. 2003); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Likewise, plaintiff had no constitutional right to have prison officials conduct an investigation of his allegations at his request. *See Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 438 (S.D.N.Y. 2004). Accordingly, plaintiff's allegations fail to state a claim for relief against defendant Eaton.

Accordingly, the Court should dismiss *sua sponte* plaintiff's claims against defendants McRoberts, Evers, and Eaton pursuant to § 1915(e)(2)(b)(ii).

2. *Injunctive Relief*

Likewise, the Court should dismiss *sua sponte* plaintiff's claims for injunctive relief. Plaintiff is no longer incarcerated at the Gus Harrison Correctional Facility, where the events alleged in the complain occurred. It is well established that "[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002); *see also*, *Incumaa v. Ozmint*, 507 F.3d 281,

286-87 (4th Cir. 2007) (citing cases from Second, Third, and Eighth Circuits); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Because plaintiff is no longer subject to the care of the official he claims was denying him his constitutional rights, his request for injunctive relief is moot. *See Candelaria v. Coughlin*, 787 F. Supp. 368, 378 (S.D.N.Y.), *aff'd*, 979 F.2d 845 (2d Cir. 1992).[3] Accordingly, the Court should dismiss plaintiff's claims for injunctive relief pursuant to § 1915(e)(2)(B)(ii).

   3.   *Official Capacity Claims*

Finally, plaintiff asserts his claims against defendants in both their individual and official capacities. However, to the extent plaintiff is suing defendants in their official capacities, they are immune from suit. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion). Further, as the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Eleventh Amendment bars suits against state officials sued in their official capacity. *See id.* at 71; *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000). Accordingly, the Court should dismiss plaintiff's claim against defendants in their official capacities

---

[3] Of course, plaintiff's transfer does not moot his entire case, because plaintiff's request for monetary damages presents a live controversy notwithstanding his transfer. *See Boag v. MacDougall*, 454 U.S. 364, 364 (1982) (per curiam).

pursuant to § 1915(e)(2)(b)(iii).[4]

E.  *Motion to Stay Discovery*

Also pending before the Court is defendants' motion to stay discovery. Defendants request that the Court stay discovery pursuant to FED. R. CIV. P. 26(c) in light of the filing of their motions to dismiss on the basis of exhaustion. If the Court accepts my Recommendation, there will no longer be any pending motions to dismiss. If the Court rejects my Recommendation and concludes that defendants are entitled to dismissal of all plaintiff's claims on the basis of exhaustion, there will no longer be a case pending in which discovery can be accomplished. In either event, upon the Court's ruling on the motions and this Recommendation, defendants' request to stay discovery on the basis of its pending motions to dismiss will become moot. Accordingly, when the Court rules on the parties objections to this Recommendation and defendants' motions to dismiss, the Court should deny as moot defendants' motion to stay discovery.

F.  *Conclusion*

In view of the foregoing, the Court should grant in part and deny in part defendants' two motions for dismissal or summary judgment. Specifically, the Court should conclude that plaintiff's claims against defendants Eaton, Sarnac, and Pirlot are not properly exhausted, and should grant summary judgment to these defendants. In all other respects, the Court should deny defendants' motions for summary judgment. Pursuant to 28 U.S.C. § 1915(e)(2)(b), the Court should *sua sponte* dismiss plaintiff's claims against defendants McRoberts, Evers, and Eaton, plaintiff's request for injunctive relief, and plaintiff's claims against the defendants in their official capacities. If the Court

---

[4]Plaintiff's claims against defendants in their individual capacities are not barred by the Eleventh Amendment, even though those claims are based on "official" actions taken by defendants. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991).

15

accepts these recommendations, only plaintiff's monetary damages claims against defendants Torres, De Los Santos, and eight unknown correctional officers in their individual capacities will remain. Finally, the Court should deny as moot defendants' motion to stay discovery.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 7/19/10

16

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 19, 2010.

                                            s/Eddrey Butts
                                            Case Manager