UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS ROBERSON,

        Plaintiff,

                                        CASE NO. 2:09-CV-12927
      v.                                JUDGE DENISE PAGE HOOD
                                        MAGISTRATE JUDGE PAUL KOMIVES

J. TORRES, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT TORRES'S MOTION FOR
SUMMARY JUDGMENT (docket #79)**

I.      <u>RECOMMENDATION</u>: The Court should grant defendant Torres's motion for summary

judgment.

II.     <u>REPORT</u>:

A.     *Procedural Background*

       Plaintiff Nicholas Roberson is a state prisoner who, at the times relevant to this action, was

incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan.  Plaintiff commenced

this action on June 25, 2009, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983

in the United States District Court for the Western District of Michigan.  The case was transferred

to his Court on July 24, 2009, and plaintiff filed an amended complaint on August 12, 2009.

Defendants are Correctional Officers James Torres, Juan De Los Santos; Deputy Warden Lee

McRoberts; Resident Unit Manager Brian Evers; Shawne Sarnac and Jennifer Pirlot, employees in

the Corrections Mental Health Program; Grievance Coordinator James Eaton; and eight unknown

correctional officers.

       In his amended complaint plaintiff alleges that defendants violated his Eighth Amendment

rights by using excessive force, failing to protect him, and failing to appropriately respond to his serious medical needs, and that they violated his First Amendment rights by retaliating against him for the filing of grievances. Specifically, plaintiff alleges that on March 10, 2009, he was instructed to move to the top bunk in his cell to make room for a new cell mate, and his current cell mate was instructed to pack his belongings to move to another cell. He tried to explain to the officer that he suffered from antisocial personality disorder, but was confronted by defendant Evers. Although he and his cell mate were "slowly" complying with the orders they had been given, the Emergency Response Team (ERT) was called. Defendant De Los Santos asked plaintiff and his cell mate if they were ready to move, and plaintiff responded that he was not the one moving. At that point, defendant De Los Santos sprayed him with a chemical agent. He and his cell mate were assaulted by the members of the ERT, and he was again sprayed with a chemical agent. He was then removed from the cell and placed in segregation. As a result of this incident, plaintiff alleges, he fell into a state of depression. He was placed in a suicide observation cell, even though he denied any suicidal ideation. While in that cell, he was under constant surveillance. He was woken up and again sprayed with a chemical agent, and transferred to Duane L. Waters hospital. Defendant Torres wrote a misconduct ticket against plaintiff based on the initial incident in the cell.

When he was returned to the prison after his release from the hospital, plaintiff was informed that his psychological treatment team had been switched by defendant Pirlot, and that his new therapist was defendant Sarnac. Plaintiff alleges that defendant Sarnac failed to meet with him and falsely corroborated the claims in the misconduct ticket written by defendant Torres. In a subsequent meeting with defendant Pirlot, she threatened to have him removed from the residential treatment program and placed in an out-patient program because of his complaints. Plaintiff alleges that he

2

filed grievances and sent letters regarding these incidents, but his complaints were denied by defendant Eaton.  He also alleges that defendant Pirlot was responsible for him being transferred to a maximum security prison, where only an out-patient treatment program is available.  *See* Amended Compl., at 4-10.  Plaintiff was subsequently appointed counsel, and is currently proceeding through counsel.

On September 27, 2010, the Court, accepting my Recommendation, granted in part and denied in part a motion for summary judgment filed by defendants.  Specifically, the Court granted summary judgment with respect to plaintiff's claims against defendants McRoberts, Evers, and Eaton.  Plaintiff subsequently voluntarily dismissed his claims against defendant De Los Santos.  Thus, the claims which remain pending are those asserting excessive force against the eight unnamed correctional officers based on the initial entry into his cell and his being sprayed with a chemical agent, and his claim against defendant Torres based on the second chemical agent incident.  On June 7, 2012, defendant Torres filed this motion for summary judgment.  He contends that there is no genuine issue of material fact that would establish that his actions constituted excessive force under the Eighth Amendment, and that he is entitled to qualified immunity.  Plaintiff, through counsel, filed a response to the motion on June 28, 2012, and defendant filed a reply on July 5, 2012.

B.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d

444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a

4

mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.      *Analysis*

Plaintiff asserts that defendant Torres violated his Eighth Amendment right to be free from cruel and unusual punishment by spraying him with a chemical agent while he was sleeping.  The Court should conclude that defendant Torres is entitled to summary judgment on this claim.[1]

1.      *Excessive Force Generally*

Unlike excessive force claims against police officers, which are analyzed for reasonableness under the Fourth Amendment, claims that prison guards used excessive force against an inmate are analyzed under the Eighth Amendment's prohibition on cruel and unusual punishment.  *See Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Id.* at 9.  In order to constitute cruel and unusual punishment

---

[1]In his amended complaint, which he drafted *pro se*, plaintiff also asserted that defendants' actions collectively violated his Fourth and Fourteenth Amendment rights, as well as his First Amendment rights because they were taken in retaliation for his exercise of his First Amendment rights. Defendant briefly addresses these claims in his motion, arguing that they are without merit.  Plaintiff does not address these arguments in his response, and it thus appears that he is proceeding only on his claim that defendant Torres used excessive force under the Eighth Amendment.  To the extent plaintiff continues to press these alternative claims against defendant Torres, the Court should conclude that defendant Torres is entitled to summary judgment on them.  Although plaintiff generally asserts a First Amendment retaliation claim, he does not specifically allege any facts that defendant Torres took an adverse action against him in retaliation for his exercise of any First Amendment right, and thus he cannot state a claim against defendant Torres.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Further, the Fourth Amendment is inapplicable to the claims of plaintiff, a prison inmate at the time of the events at issue.  *See Bonilla v. Jaronczyk*, 354 Fed. Appx. 579, 581 (2d Cir. 2009); *cf. Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984).  Finally, because the Eighth Amendment provides a specific constitutional standard for assessing plaintiff's claim, "[t]he validity of the claim must . . . be judged by reference to [this] specific constitutional standard," rather than under the Due Process Clause of the Fourteenth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).

prohibited by the Eighth Amendment, the plaintiff must establish both a subjective and objective component. As to the subjective component, the actions of prison officials must constitute "'the unnecessary and wanton infliction of pain[.]'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). Thus, in analyzing claims of excessive force by prison officials, the Court's inquiry focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In *Hudson*, the Court recognized factors relevant to a determination of whether the force was wanton and unnecessary: (1) the extent of the injury suffered by the inmate; (2) the need for application of force; (3) the relationship between the need for force and the amount of force used; (4) the official's reasonable perception of the threat posed; and (5) any efforts made by the officials to temper the severity of their response. *See Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also*, *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (per curiam). With respect to the objective component, plaintiff must show that the defendants actions were "objectively harmful enough" to offend "contemporary standards of decency." *Id*. at 6.

To succeed on an Eighth Amendment excessive force claim, a plaintiff need not establish any minimum quantum of injury sustained, and even force which causes no discernible injury may be actionable. *See Wilkins*, 130 S. Ct. at 1178 (discussing *Hudson*, 503 U.S. at 9). However, "[t]his is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry. '[T]he extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation.' The extent of injury may also provide some indication of the amount of force applied." *Id*. (quoting *Hudson*, 503 U.S. at 7 (in turn quoting *Whitley*, 475 U.S. at 321)).

6

2.      *Analysis*

Defendant Torres avers that he sprayed a single, three-second burst of a chemical agent after plaintiff refused his order to back-up to the food slot so that he could be restrained in order to be removed from the cell for a medical run.  Plaintiff does not present any evidence that defendant Torres did not give such an order, or that he complied with the order.  Thus, the fact of the order being given and being disobeyed is taken as true for purposes of this motion.  There is a dispute, however, as to whether plaintiff heard the order.  Defendant Torres avers that plaintiff was fully awake when he gave the order and repeatedly responded, "I'm not coming out, do what you have to do."  Def.'s Mot., Ex. A, Aff. of James Torres, ¶ 4.  Plaintiff testified in his deposition that he was asleep in his cell with his blanket over his head.  *See* Pl.'s Resp., Ex. A, at 25-26.  Further, although plaintiff asserts that he had difficulty breathing for a few minutes after the spraying, he does not allege that he suffered any injury as a result of defendant Torres's actions.  Considering these facts in light of the *Hudson* factors discussed above, the Court should conclude that defendant Torres is entitled to summary judgment.

Here, even accepting plaintiff's version of events, defendant Torres's actions do not constitute a wanton and unnecessary infliction of pain.  Defendant Torres had issued an order with which plaintiff refused to comply.  Even assuming plaintiff was asleep at the time, defendant Torres had no way of knowing this as petitioner's head was covered with his blanket.  The brief, single use of a chemical agent, with no resulting injury, to secure plaintiff's compliance was a reasonable amount of force, and much less force than alternative measures such as entry into the cell by a team of armed officers.  There is no question that defendant Torres had a legitimate interest in having his order obeyed.  *See Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992) (quoting *Soto v. Dickey*, 744 F.2d

7

1260, 1267 (7th Cir. 1984)) ( "'Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.'").  There is also no question that "even simple inmate recalcitrance, in the form of refusal of verbal orders, may justify the use of tear gas/pepper spray/mace-like agents, in non-dangerous amounts, to obtain inmate compliance so as to maintain institutional Order, even when the inmate is in handcuffs, or locked in his cell when the chemical agent is used." *Enriquez v. Kearney*, 694 F. Supp. 2d 1282, 1294 (S.D. Fla. 2010) (citing cases); *see also*, *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002); *Siggers v. Renner*, 37 Fed. Appx. 138, 140 (6th Cir. 2002); *Soto*, 744 F.2d at 1270.  Petitioner does not allege or present any facts to show that Torres's purpose in using the chemical agent was to cause pain rather than to secure compliance with his order, or that Torres used more than was necessary to secure compliance.  On the contrary, it is generally recognized that "the decision to use a chemical agent to obtain physical control is generally preferable to the use of physical force." *Alspaugh v. Dahl*, No. 2:07-cv-136, 2008 WL 4425813, at *1 (W.D. Mich. Sept. 26, 2008); *see also*, *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (quoting *Soto*, 744 F.2d at 1262) ("A limited application of mace may be 'much more humane and effective than a flesh to flesh confrontation with an inmate.").

Plaintiff's only argument to establish a constitutional violation is that there was no need to use force at all because he was asleep.  However, under his version of events plaintiff's head was covered by his blanket, and thus defendant Torres had no way of knowing that petitioner was asleep rather than simply refusing to acknowledge Torres and obey his command.  Whether, in hindsight, the application of force was necessary does not determine whether an Eighth Amendment violation has occurred.  The relevant inquiry is whether the guard reasonably thought that force was necessary

8

and used force commensurate with the perceived need, or rather maliciously used force for the purpose of inflicting pain. In other words, the question is "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. As the Court explained, "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319. Here, even assuming as true plaintiff's version of events, defendant Torres could have plausibly thought that plaintiff was willfully disobeying his order and that the use of a limited means of obtaining compliance was necessary. Thus, petitioner cannot show that defendant Torres's use of a chemical agent constituted the wanton and unnecessary infliction of pain, rather than as a reasonable means of obtaining compliance with his order.

Moreover, even if plaintiff could raise a genuine issue of material fact with respect to whether defendant Torres violated his Eighth Amendment rights, defendant Torres is entitled to qualified immunity."Under § 1983 . . . , a plaintiff may seek money damages from government officials who have violated her constitutional or statutory rights. But to ensure that fear of liability will not unduly inhibit officials in the discharge of their duties, the officials may claim qualified immunity; so long as they have not violated a clearly established right, they are shielded from personal liability." *Camreta v. Greene*, 131 S. Ct. 2020, 2030-31 (2011) (internal quotations and citations omitted). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). Thus,

"[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). The inquiry into whether a particular right is clearly established "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). However, it is not necessary that "the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation omitted). Rather, what is required is that "in light of pre-existing law the unlawfulness . . . be apparent." *Id.* (internal quotation omitted). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (citing *Hope*, 536 U.S. at 740-41); *see also*, *Grawey v. Drury*, 567 F.3d 302, 313-14 (6th Cir. 2009). Under *Brosseau*, as the Sixth Circuit has explained, a plaintiff may show that a defendant violated clearly established law by showing either that: (1) the violation was obvious under the general constitutional standards governing the asserted right; or (2) the defendant's conduct failed to adhere to a particularized body of precedent that governs the case. *See Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (discussing *Brosseau*, 543 U.S. at 199-200).

Here, abundant case law makes clear that the use of a chemical agent is generally a permissible means of obtaining compliance with a guard's order. The undisputed facts show that defendant Torres gave a lawful order to plaintiff and that plaintiff failed to comply with that order. The facts in the light most favorable to plaintiff also show that, even if plaintiff was asleep at the time of the order, that fact could not have been known to defendant Torres. Although in certain situations the use of a chemical agent may constitute excessive force under the Eighth Amendment, "[t]he law

10

is unclear regarding the parameters of the permissible use of pepper spray to address inmates who disobey orders[.]" *Jennings v. Hays*, No. CV 10-8004, 2011 WL 1480038, at *9 (D. Ariz. Apr. 19, 2011). Because of this, and in light of the fact that plaintiff did not comply with defendant Torres's order, "even if [d]efendant['s] conduct violated the Eighth Amendment, that would not have been clear to a reasonable officer in the situation confronted," and defendant is therefore entitled to qualified immunity. *Id*. at *10; *see also*, *Howard v. Nunley*, No. CV-06-00191, 2010 WL 3785536, at *5-*6 (E.D. Cal. Sept. 24, 2010), a*ff'd*, 465 Fed. Appx. 669 (9th Cir. 2012); *cf. Davis v. City of Albia*, 434 F. Supp. 2d 692, 706-08 (S.D. Iowa 2006) (police officer entitled to qualified immunity for use of pepper spray during arrest where contours of permissible and impermissible uses of pepper spray were not clear and officer's use did not fall into the category of clearly impermissible uses).

D.    *Conclusion*

In view of the foregoing, the Court should conclude that, even in the light most favorable to the plaintiff, the facts do not support a finding that defendant Torres violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. The Court should also conclude that, even if defendant Torres's conduct did violate the Eighth Amendment, defendant is entitled to qualified immunity. Accordingly, the Court should grant defendant Torres's motion for summary judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505

(6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which

raise some issues but fail to raise others with specificity, will not preserve all the objections a party

might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served

upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/3/13


The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and  by
electronic means or U.S. Mail on January 3, 2013.

s/Eddrey Butts
Case Manager